1  Lenore L. Albert, Esq.   SBN 210876
2  LAW OFFICES OF LENORE ALBERT
   7755 Center Avenue, Suite #1100
3  Huntington Beach, CA 92647
4  Telephone (714) 372-2264
   Facsimile (419) 831-3376
5  Email: lenorealbert@msn.com
6
7  Attorney for plaintiff PHILIP KOEBEL
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10 PHILIP KOEBEL, an individual,        CASE NO.
11                                         SACV11 - 1978 AG (ANx)
            Plaintiffs,
12 vs.
13                                       VERIFIED COMPLAINT
14 MTC FINANCIAL, INC., D/B/A
   TRUSTEE CORPS, a business entity      1. VIOLATION OF 12 U.S.C. §2609
15 type unknown, FEDERAL HOME            2. DECLARATORY RELIEF
                                         3. WRONGFUL FORECLOSURE
   LOAN MORTGAGE                         4. FRAUD
16                                       5. PERRATA VIOLATION
   CORPORATION, a business entity type   6. BREACH OF WRITTEN PERMANENT
17 unknown, OCWEN LOAN                      MODIFICATION AGREEMENT
   SERVICING, LLC, a business entity     7. PROMISSORY ESTOPPEL
18                                       8. NEGLIGENCE
   type unknown, ALL PERSONS            9. VIOLATION OF CALIFORNIA
19 UNKNOWN CLAIMING ANY                    BUSINESS AND PROFESSIONS CODE
   LEGAL OR EQUITABLE RIGHT,              SECTIONS 17200 ET SEQ
20
   TITLE, ESTATE, LIEN OR
21 INTEREST IN THE PROPERTY              [Demand for Jury Trial]
   DESCRIBED IN THE COMPLAINT
22 ADVERSE TO PLAINTIFFS' TITLE,         [TRO FILED REQUESTING RELIEF
   OR ANY CLOUD ON PLAINTIFFS'          BEFORE – HOME SALE 12/23/11 at
23                                             11:00AM]
   TITLE THERETO and DOES 1
24 through 10, inclusive,
25
            Defendants.
26
27
28
   ────────────────────────────────────
   *VERIFIED COMPLAINT*                          1
   *Koebel v. MTC FINANCIAL, INC.*

Plaintiff PHILIP KOEBEL, by and through his attorney, brings this action against Defendant MTC FINANCIAL, INC., d/b/a TRUSTEE CORPS, Defendant Federal Home Loan Mortgage Corporation, Defendant Ocwen Loan Servicing, LLC, defendants herein named as "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiffs' title or any cloud on plaintiffs' title thereto" are hereinafter sometimes referred to as the "unknown defendants," and Does 1 through 100, inclusive ("Defendants") and alleges the following on information and belief, except as to those allegations which pertain to the Plaintiff:

## 1. **VENUE**

2. The Court has subject matter jurisdiction over this action under 28 USC § 1331 wherein the action arises under the Constitution, laws or treaties of the United States; the Court also has exclusive jurisdiction over matters wherein Federal Home Loan Mortgage Corporation "Freddie Mac" is a defendant.

3. The Court has personal jurisdiction over the defendants in this action by the fact that the Defendants are conducting business in the state of California.

4. Venue is proper in this Court pursuant to 28 USC § 1392 because the defendant in this action resides in Orange County, California; the action involves real property located in the Central District of California; and pursuant to 28 USC § 1391(b) and

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

2

a substantial part of the events or omissions on which the claims are based occurred in this District.

5. **PARTIES**

6. Plaintiff PHILIP KOEBEL ("Plaintiff") is an individual residing in Pasadena, California. This action concerns real property residence owned by Plaintiff in fee simple which is located at 255 Robinson Road, Pasadena, California 91104, the legal description of which is attached hereto as Exhibit "A" (the "Subject Property").

7. Defendant MTC FINANCIAL, INC., d/b/a TRUSTEE CORPS ("MTC"), is a business with its principal place of business in Irvine, California. It is the legal trustee that recorded and/or executed the Notice of Sale and is attempting to sell Mr. Koebel's home at foreclosure and is being sued in such capacity.

8. Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac"), has its principal place of business at 8200 Jones Branch Drive, McLean, VA 22102-3110, and regularly conducts business in the State of California.

9. Defendant Ocwen Loan Servicing, LLC ("Ocwen"), is a Delaware corporation with its principal place of business in Florida. It has been the loan servicer on the Subject Property for several years.

10. The defendants herein named as "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the

*VERIFIED COMPLAINT*

*Koebel v . MTC FINANCIAL, INC.*

3

complaint adverse to plaintiffs' title or any cloud on plaintiffs' title thereto" are hereinafter sometimes referred to as the "unknown defendants" and are unknown to Plaintiffs.  These unknown defendants and each of them claim or appear to claim some right, title, estate, lien, or interest in the property described in Exhibit A, adverse to Plaintiffs' title.  Their claims, and each of them, constitute a cloud on Plaintiffs' title to the property.

11. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1-10 and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

12. Plaintiffs are informed and believe and thereon alleges that DOES 1 through 5 claim some right, title, estate, lien or interest in the Subject Property, adverse to Plaintiffs' title and their claims, and each of them, constitute a cloud on plaintiffs' title to that property.

13. Defendants sued herein as DOES 6 through 10 are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this Complaint, and that each of said fictitiously named Defendants is indebted to Plaintiffs as here and after alleged.

14. The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and severely, not only named Defendants, but all Defendants desiguated as DOES 1 through 10 as well.

15. Plaintiffs are informed and believe and thereon allege that, at all times mentioned herein, Defendants were agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or co-conspirators of each of their co-defendants and in doing the things herein after mentioned, or acting within the course and scope of their authority of such agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or co-conspirators with the permission and consent of their co-defendants and, consequently, each Defendant named herein, and those Defendants named herein as DOES 1 through 10, inclusive, are jointly and severely liable to the Plaintiffs for the damages and harm sustained as a result of their wrongful conduct.

16. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary

wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

17. Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiffs by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include, inter alia, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct of complained of herein.

18. Any applicable statutes of limitations have been tolled by the Defendants continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiffs could not have discovered, did not

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

6

discover, and were prevented from discovering, the wrongdoing complained of herein.

19. In the alternative, Defendants should be stopped from relying on any statutes of limitations. Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices. Defendants owed Plaintiffs an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

20. All of said parties have done business in Los Angeles County, California at all times pertinent hereto.

21. **GENERAL ALLEGATIONS**

22. On June 30, 2008 a "Security Instrument" captioned as a deed of trust was recorded in the Los Angeles County Recorder's Office by Taylor, Bean & Whitaker Mortgage Corp. as Lender on Philip Koebel's property located at 255 Robinson Road, Pasadena, California. The Security Instrument was used to secure a Note in the amount of $360,000.00.

23. The C.E.O. of Taylor, Bean & Whitaker Mortgage Corp., Lee Farkas was criminally indicted for bank fraud (e.g. funding loans like the Koebel loan and selling them to Fannie Mae, Freddie Mac and other investors) filed on or about June 15, 2010 Case No. 1:10-cr-200-LMB (US Dist Ct ED Va).

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

7

24. The corporate heads of Fannie Mae and Freddie Mac have now and are now being investigated by S.E.C. in their role in the housing crisis filed on or about December 19, 2011.

25. This has left, homeowners like Mr. Koebel who obtained his loan from Taylor, Bean & Whitaker and then were sold to Freddie Mack, wide open to fraud when he tried to save his home from foreclosure.

26. Mr. Koebel was a struggling homeowner who obtained a written permanent modification effective December 2010 on terms that would sustain his ownership. (Agreement is attached hereto).

27. However, defendants and each of them, could profit more from Mr. Koebel's re-default than his monthly payments so through a series of fraudulent acts as more particularly described below, the defendants set out to ensure Mr. Koebel would default on this permanent modification.

28. Defendant Ocwen was the loan servicer of this obligation.

29. On May 6, 2009 Ocwen and MTC FINANCIAL, INC., d/b/a TRUSTEE CORPS caused a Notice of Default to be recorded on Mr. Koebel's property.  The Notice of Default purported the Lender complied with Cal. Civ. Code §2923.5 (the Perrata Act) by initiating and exploring foreclosure alternatives with Mr. Koebel prior to recording the Notice of Default on Mr. Koebel's property.

30. Plaintiff alleges this declaration was not true.

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

8

31. Mr. Koebel was experiencing a financial hardship but Ocwen did not explore foreclosure alternatives with him prior to recording the notice of default in 2009.

32. Plaintiff is informed and believes and alleges thereon he qualified under the HAMP program because his home was owner occupied, he owed less than $729,000.00, it was a residential property with 4 units or less, and a modification would result in a net positive value in comparison to foreclosure in 2009.

33. Plaintiff is informed and believes and alleges thereon the defendants knew Mr. Koebel was eligible for the program but refused to offer the program before defaulting Mr. Koebel and throwing him into imminent foreclosure.

34. A year later on or about July 20, 2010, while still facing imminent foreclosure, Ocwen finally sent a temporary payment plan "TPP" under the HAMP program to Mr. Koebel. Attached hereto as Exhibit B is a true and correct copy of the TPP.

35. The plan called for Mr. Koebel to make payments of $1,344.95 to Ocwen in September, October and November, 2010. It also requested certain financial documents to be sent in by Mr. Koebel and that he sign and return the TPP to Ocwen.

36. Mr. Koebel signed and returned the TPP to Ocwen, made his payments under the plan in the amount of $1,344.96 in September, October and November 2010, provided the requested documents and all of his representations made continued to

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

be true so Ocwen prepared and delivered Mr. Koebel a permanent modification under HAMP.

37. Ocwen sent Mr. Koebel a permanent modification under HAMP.

38. Mr. Koebel executed the permanent modification agreement, had it notarized and returned it to Ocwen as instructed on November 24, 2010. Attached hereto as Exhibit C is a true and correct copy of the permanent HAMP modification agreement.

39. Mr. Koebel then began making his modified payments of $1,344.95 per month.

40. His second payment was on December 30, 2010 by cashier's check made payable to Ocwen in the amount of $1,344.95.

41. Ocwen cashed the check.

42. But Ocwen sent a December statement erroneously stating Mr. Koebel's interest was over 6% and not the 2% as stated in the permanent modification.

43. The terms of the permanent modification were abusive. For example, Ocwen impounded $259.86 per month for real property taxes for 2011 after Mr. Koebel entered into his permanent modification with Ocwen on November 24, 2010. Mr. Koebel's actual annual tax liability for 2011 is $2476.77 according to the Los Angeles County Treasurer and Tax Collector website. Ocwen violated 12 U.S.C. §2609 and Cal Civ Code §2954 which forbids Ocwen from collecting over one-sixth of the actual property tax due in an impound account. Here one sixth of

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

$2,476.77 was only $412.79 that Ocwen could overcharge Mr. Koebel. But Ocwen required an impound of $3,118.32, or $641.55 in excess of the actual real property tax payment for 2011 from Mr. Koebel by impounding $259.86 per month as represented in the written modification agreement attached hereto. As a result of Koebel's violation of this law, Mr. Koebel was overcharged by approximately $228.76.

44. In April 2011, Ocwen attempted to rescind the permanent modification on the purported grounds that franchise taxes were due.  Mr. Koebel sent written information showing and ensuring that all defaults were cured as more fully alleged below.

45. On April 13, 2011 the OCC issued a Cease and Desist "Consent Order" against Ocwen for failing to properly oversee its personnel and ensure its foreclosure processes and papers were truthful.  In sum, Ocwen was filing and recording land records without regard to the truthfulness of the contents and taking residential homes as a result.

46. Nevertheless, Ocwen asserted it was going to have MTC, as legal trustee, sell the home at auction on May 9, 2011.

47. So on or about May 9, 2011 Mr. Koebel was under the belief that defendant MTC FINANCIAL, INC., d/b/a TRUSTEE CORPSd/b/a Trustee Corps ("MC") was going to sell and did sell Mr. Koebel's home at foreclosure.

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

48. Ocwen told him that they were going to take his home and allow a foreclosure sale to proceed on May 9, 2011 because he had a tax lien on the property in violation of the modification agreement.

49. In response to this conversation, Mr. Koebel faxed Ocwen a 13 page correspondence on May 9, 2011 to 407-737-5416 stating "I demand that you cancel or postpone today's foreclosure sale" and  included a release of lien from the franchise tax board recorded on April 11, 2011, a fax from the franchise tax board giving notice of release of the lien; a copy of his permanent modification agreement; a copy of a cashier's check no. 13837 made payable to Ocwen in the amount of $1,344.95 dated April 6, 2011; a copy of a cashier's check no. 13836 made payable to Ocwen in the amount of $1,344.95 dated April 6, 2011; a copy of a cashier's check no. 117529 made payable to Ocwen in the amount of $1,344.95 dated April 6, 2011.

50. Three different representatives assured Mr. Koebel that the sale was postponed or cancelled as more fully alleged below.

51. Then on or about May 12, 2011 Mr. Koebel found a written notice posted to his door which stated:

52. NOTICE IS HEREBY GIVEN that on 5/9/2011 Riverhawk Propery Management, LLC has purchased the property you currently occupy, located at:

53. 255 Robinson Rd.

54. Pasadena, CA 91104

55. No one ever informed Mr. Koebel that the sale was canceled and operating under the belief he lost his home he filed a state court action alleging wrongful foreclosure and fraud.

56. So distressed and emotionally distraught, Mr. Koebel, representing himself in pro per, could not muster up the where-with-all to prosecute his claims and defend his own home.

57. From the first default through present, Ocwens failure to deal with him in good faith has caused Mr. Koebel emotional distress, such as headaches, depression, anxiety, inability to concentrate, insomnia and general malaise.

58. Finally, he obtained counsel but the case was already dismissed, and Ocwen would not return his counsel's phone calls or letters when attempting to negotiate a deal so Mr. Koebel could regain his home.

59. No Trustee's Deed Upon Sale was ever recorded in the County Recorder's Office but Ocwen and MTC insisted up to the present day that the home was sold and reverted back to Freddie Mac.

60. Then on December 12, 2011, Mr. Koebel received a flyer advertising home saving services which stated that his home was set for foreclosure auction on December 23, 2011.

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

61. Mr. Koebel was utterly shocked and surprised because he was informed that his home had already sold at foreclosure on May 9, 2011.

62. He immediately contacted his counsel on December 12, 2011 who pulled a title report and downloaded a document captioned Notice of Sale with a foreclosure auction date of December 23, 2011.

63. Even though the document was filed with the Los Angeles County Recorder's office. Defendants never posted the Notice of Sale on the property at least 20 days before the date set for auction as required by Section 2924f of the California Civil Code and the defendants did not send a copy of the Notice of Sale by registered or certified mail as required by Section 2924b of the California Civil Code.

64. Although Mr. Koebel's home loan was modified in December 2010 which cured all prior defaults and recapitalized those payments into a new principal balance, the modification was not mentioned in the Notice of Sale and no Notice of Default was issued prior to the November 21, 2011 Notice of Sale being recorded on Mr. Koebel's home.

65. No one from Ocwen ever contacted Mr. Koebel from May 9, 2011 through to November 21, 2011 to initiate and explore foreclosure alternatives.

66. Ocwen never sent him a monthly mortgage statement to give some type of signal that Mr. Koebel still owned the home.

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

14

67. Ocwen cashed all of the payments Mr. Koebel made through April 2011 then told Mr. Koebel they sold his home on May 9, 2011.

68. That is not initiating and exploring alternatives to foreclosure prior to taking someone's home.

69. That was creating a trap to induce Mr. Koebel's default of failure to pay by pretending he no longer owned the home.

70. Ocwen did not inform Mr. Koebel that they could have a meeting to discuss alternatives to foreclosure in person.

71. Ocwen did not inform Mr. Koebel of the nature of his default or that there was a 'default' and he still had a right to his home after May 9, 2011.

**72. Mr. Koebel only discovered the impending foreclosure sale from a marketing flyer that arrived at his home on December 12, 2011 advertising his home by a third party looking to peddle their home saver services was going to be sold on December 23, 2011.**

73. Failure to give the notices should result in the impending foreclosure being invalid and merit injunctive relief.

74. The content in the Notice of Sale was also insufficient.  Notice of Sale recorded on November 21, 2011 only mentioned the original "Security Instrument" and not the permanent modification and purported the legal trustee had the right to go forward with the nonjudicial foreclosure process with a pending sale date of December 23,

*VERIFIED COMPLAINT*

*Koebel v. MTC FINANCIAL, INC.*

2011 at 11:00AM by the fountain located at 400 Civic Center Plaza, Pomona, CA 91766.

75. It did not mention that Freddie Mac was the owner of the loan.

76. No notice was ever sent informing Mr. Koebel Freddie Mac owned his loan.

77. Said recording also violated Cal Civ Code §2924 on the grounds that the legal significance of the permanent modification acted as a rescission of the Notice of Default.

78. Ocwen's acceptance of payments under the permanent modification, estopped Ocwen from denying that the old notice of default had been cured. Notice of Default attached as Exhibit E.'

79. Either failing to rescind the Notice of Default within 30 days of receiving the permanent modification from Mr. Koebel and accepting his payments was a violation of Cal Civ Code §2924c or defendants actions were fraudulent with regard to the permanent modification which was worth in excess of $100,000.00 making such fraud criminal.

80. Either the Permanent Modification was a modification akin to refinancing a home extinguishing an effectiveness of a default on the original loan or it was an instrument used to defraud Mr. Koebel out of possession of his home.

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

81. Furthermore, recording the Notice of Sale on November 21, 2011 on Mr. Koebel's property without a valid Notice of Default was in violation of Cal Civ Code §2924 as well.

82. Said recording was in violation of Cal Civ Code §2923.5 which required Ocwen to initiate contact and explore foreclosure alternatives 30 days prior to recording a Notice of Default.

83. Plaintiff alleges that Ocwen did not initiate contact and explore foreclosure alternatives with him 30 days prior to the Notice of Sale being recorded on November 21, 2011 or at any time after he received his permanent modification under HAMP.

84. Mr. Koebel is an attorney who assists homeowners seeking protection from the US Bankruptcy courts.

85. Mr. Koebel is informed and believes and alleges thereon the defendants are treating him in a biased and unfair manner and retaliating against him.

86. Using parlor tricks to take an attorney's home who is a consumer advocate that just happened to pick the wrong mortgagor to refinance his home is despicable, warranting punitive damages.

## **FIRST CAUSE OF ACTION**

## **FOR VIOLATION OF 12 U.S.C. §2609 AGAINST ALL DEFENDANTS**

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

87. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 86, inclusive, as though fully set forth herein.

88. The FDIC Consumer Protections laws are codified at 12 U.S.C. §2601 et seq.

89. The findings and purposed of these federal Consumer Protection Laws are stated as follows:

FINDINGS AND PURPOSE

SEC. 2.  (a)  The Congress finds that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country. The Congress also finds that it has been over two years since the Secretary of Housing and Urban Development and the Administrator of Veterans' Affairs submitted their joint report to the Congress on "Mortgage Settlement Costs" and that the time has come for the recommendations for Federal legislative action made in that report to be implemented.

(b)  It is the purpose of this Act to effect certain changes in the settlement process for residential real estate that will result--

in more effective advance disclosure to home buyers and sellers of settlement costs;

in the elimination of kickbacks or referral fees that tend to increase unnecessarily the costs of certain settlement services;

in a reduction in the amounts home buyers are required to place in escrow accounts established to insure the payment of real estate taxes and insurance; and

in significant reform and modernization of local recordkeeping of land title information.

*[Codified to 12 U.S.C. 2601]*

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

18

90. 12 U.S.C. §2609 forbids impounding more than 1/6th over the amount actually due for real property Defendant Ocwen violated Cal. Civil Code §2954 and 12 U.S.C. §2609 by charging excess tax impound fees.

91. Ocwen demanded an impound of $259.86 per month for real property taxes for 2011 after Mr. Koebel entered into his permanent modification with Ocwen on November 24, 2010.

92. But the Los Angeles County Treasurer and Tax Collector stated Mr. Koebel's actual annual tax liability for 2011 was $2476.77.

93. Ocwen was only allowed to impound $412.79 above the $2476.77 as stated on the Los Angeles County Treasurer and Tax Collector's websie.

94. Consequently, Ocwen violated 12 U.S.C. §2609 and Cal Civ Code §2954 which forbids Ocwen from collecting over one-sixth of the actual property tax due in an impound account. Here one sixth of $2,476.77 was only $412.79 that Ocwen could overcharge Mr. Koebel. But Ocwen required an impound of $3,118.32, or $641.55 in excess of the actual real property tax payment for 2011 from Mr. Koebel by impounding $259.86 per month as represented in the written modification agreement attached hereto.

95. The statements that Mr. Koebel received also stated that Ocwen was charging him over 6% interest.

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

19

96. But the written permanent modification stated that his interest was supposed to be 2%.

97. Mr. Koebel inquired about the failure of Ocwen to properly charge his account according to the written permanent modification agreement and to make the appropriate corrections to his account.

98. But Ocwen failed to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);

99. Ocwen also failed to conduct an investigation, then provide the borrower with a written explanation or clarification that includes--

       to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

       the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

after conducting an investigation, provide the borrower with a written

explanation or clarification that includes--

> information requested by the borrower or an explanation of
>
> why the information requested is unavailable or cannot be
>
> obtained by the servicer; and

> the name and telephone number of an individual employed
>
> by, or the office or department of, the servicer who can
>
> provide assistance to the borrower.

> and to protect Mr. Koebel's credit rating the 60 day period at
>
> issue.

100.    As a result of Koebel's violation of this law, Mr. Koebel was injured

because he was overcharged by approximately $228.76 that could have been

applied to his principal and interest that year instead of sitting in the suspense

account and Mr. Koebel is due statutory damages as allowed under Cal Civ Code

§2954 and the federal statute Section 6 ($1,000.00 plus actual damages).

101.    Plaintiff is further informed and believes and alleges thereon that Ocwen has

a pattern and practice of hiding this overcharge as a fabricated "hazardous

insurance" charge, when in fact, there was no requirement of "hazardous insurance" to be placed on the property.

102.    The public as measured by the 'least sophisticated consumer test,' has no understanding of the difference between homeowners insurance, mortgage insurance and hazard insurance and as such, the practice is deceitful, as there is no full disclosure of this hidden charge in the written documents, such as Mr. Koebel's written permanent modification in explaining the impound being charged or any disclosure in the document or documents that accompanied the modification on whether the home was in a hazard zone requiring said insurance.

103.    Plaintiff is informed and believes and alleges thereon that Ocwen has a pattern and practice of violating the impound law in California and this is only an example thereof.

104.    As a further result of Ocwen's conduct, the impound account was voidable in 2010 and remains so today.

## SECOND CAUSE OF ACTION

## FOR DECLARATORY RELIEF AGAINST ALL DEFENDANTS

105.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 104, inclusive, as though fully set forth herein.

106.    An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning their respective rights and duties, and their interest in and

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

to the Subject Property in that Plaintiffs allege that the trustee's sale referenced above was and should be null and void in that said sale is being unfairly and improperly noticed and conducted and is/was a violation of California Civil Code section 2923 and 2924 et seq. in that (1) Defendants recorded a Notice of Sale on 11/21/11 when the last Notice of Default on the property was recorded on 6/01/09, but a permanent modification was entered into after the notice of default on 11/24/10 thereby rescinding the notice of default making both the Notice of default and the Notice of sale void; and/or (2) defendants failure to mail or post the Notice of Sale dated 11/21/11 to Mr. Koebel voids the notice of sale; and/or (3) the foreclosure sale must be enjoined on the grounds Ocwen failed to comply with Cal Civ Code §2923.5, and/or (4) the (contemplated) Trustee's Deed Upon Sale does is a legal nullity.

107.     A judicial determination is necessary and appropriate at this time under the circumstances to verify and determine the respective rights and duties of the parties with respect to the Subject Property.  Specifically, Plaintiffs seek a judicial determination that:

    a. The Notice of default dated 6/1/09 and Notice of Sale dated 11/21/11 are void and ineffective to convey the trustee any right to sell the Subject Property at foreclosure;

b. The Trustee's Deed upon Sale is void and ineffective to convey any interest in and to the Subject Property;

c. Plaintiffs are entitled to an Order of this Court canceling the Trustee's Deed Upon Sale, if any should occur between now and the time of trial;

d. The permanent HAMP modification dated 11/24/10 contains the obligations and rights of the parties to this action; and

e. Such a declaration is necessary and appropriate at this time in order that Plaintiffs may ascertain their rights in and to the Subject Property.

## THIRD CAUSE OF ACTION

## FOR DAMAGES FOR WRONGFUL FORECLOSURE

## AS TO ALL DEFENDANTS

108.    Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 107, inclusive, as though fully set forth herein.

109.    Ocwen failed to explore options to avoid foreclosure with plaintiff then put plaintiff's home up for foreclosure auction. Cal. Civ. Code §2923.5.

110.    Under Civil Code section 2924c, a notice of sale must be posted on the property or mailed by certified mail.  The posting must be made in conformity with Cal. Civ. Code §2924.8 concurrently with a mailing pursuant to Cal. Civ. Code §2924b.

*VERIFIED COMPLAINT*

*Koebel v . MTC FINANCIAL, INC.*

24

111.     Cal. Civ. Code §2924b(b)(2) requires the notice of sale to be mailed by registered or certified mail to Mr. Koebel 20 days before the sale date.

112.     The notice of sale, or publication of the notice of sale, was not posted on Mr. Koebel's property in conformity with Cal. Civ. Code §2924.8 and it was mailed by registered or certified mail to Mr. Koebel 20 days before the sale date in compliance with Cal. Civ. Code §2924b(b)(2).

113.     Defendants did not post the November 21, 2011 Notice of Sale or a publication thereof on his dwelling at least 20 days before the sale date.

114.     Defendants did not mail the November 21, 2011 Notice of Sale or a publication thereof  by registered or certified mail at least 20 days before the sale date to Mr. Koebel.

115.     Instead, Mr. Koebel learned from the sale from a third party marketing mailer sent his home peddling its wares that it could save its home from sale on December 23, 2011.

116.     But for the marketing flyer, the defendants would have secretly sold Mr. Koebel's property on December 23, 2011 without his knowledge.

117.     Plaintiff is informed and believes and alleges thereon that this was intentional.

*VERIFIED COMPLAINT*

*Koebel v. MTC FINANCIAL, INC.*

118.     Defendants engaged in a fraudulent foreclosure of the Subject Property in that Defendants never gave notice of the sale of the property as required by law. Defendants conspired between themselves to deprive Plaintiff of his home.

119.     Defendant is further informed and believes and alleges thereon they chose December 23, 2011 as a signal to Mr. Koebel that this was his personal "holiday" present from defendants to him.

120.     Furthermore, defendants never complied with Cal. Civ. Code §2923.5 and initiated and explored foreclosure alternatives with Mr. Koebel prior to the sale. It did not attach a declaration stating it did so in the notice of sale and it did not record a notice of default attesting to the same after the permanent modification was executed on November 24, 2010 as more fully alleged in the Perrata Violation claim.

121.     By reason of the fraudulent foreclosure, Mr. Koebel is at risk of suffering a property loss of unique land and injunctive relief should issue.

122.     As a further proximate result of the defendants actions, Mr. Koebel suffered general and special damages, attorney fees and costs in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

## FOR DAMAGES FOR FRAUD

## AS TO ALL DEFENDANTS

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

123.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 122, inclusive, as though fully set forth herein.

124.     Ocwen and MTC through their agents, attempted to conduct a secret sale of Mr. Koebel's property on December 23, 2011.

125.     On November 21, 2011 they secretly recorded a Notice of Trustee's Sale with the Los Angeles County Recorder's Office signed by Rowen Paz, Trustee Sales Officer and dated 11/17/2011 by "MTC financial Inc., DBA trustee Corps. As Successor Trustee."

126.     Plaintiff is informed and believes and alleges thereon that Ocwen instructed MTC to prepare and record this document.

127.     As Ocwen's agent or authorized representative, MTC did as instructed.

128.     Plaintiff is informed and believes and alleges thereon that  this secret recording without notice to Mr. Koebel was in furtherance of Ocwen intentionally failing to disclose that they did not sell Mr. Koebel's home on May 9, 2011 and that they were legally bound to accept any payments under the HAMP permanent modification from him after May 9, 2011.

129.     However, in order to induce his default on the HAMP permanent modification, they needed to make it look like he no longer owned the home after May 9, 2011 without putting it directly in writing one way or the other on their own letterhead.

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

27

130.     Mr. Koebel spoke to Vibhuti Bhosle, Maribel, Marcelo Massini, Hernando Sanabria employees or representatives of Ocwen on May 9, 2011 by phone prior to the sale time. One employee would state the sale was being postponed. Another employee would state the sale was being cancelled.

131.     However, on or about May 12, 2011 Mr. Koebel found a written notice posted to his door which stated:

**NOTICE IS HEREBY GIVEN that on 5/9/2011 Riverhawk Property Management, LLC has purchased the property you currently occupy, located at:**

**255 Robinson Rd.**

**Pasadena, CA 91104**

132.     The notice was dated May 9, 2011 and signed by "Eliot Pozehl" with the title of "Property Manager." The document was captioned "NOTICE OF CHANGE OF OWNERSHIP" and personally addressed to "Phillip E. Koebel or Current Occupant."

133.     Plaintiff is informed and believes and alleges thereon that Riverhawk and Eliot Pozehl are employees and authorized agents of Ocwen.

134.     None of Ocwen's employees who spoke to Mr. Koebel followed up to inform him that his home in fact did not sell or that the erroneous sale was rescinded and he could continue making his modified payments under HAMP.

*VERIFIED COMPLAINT*                                          28
*Koebel v . MTC FINANCIAL, INC.*

135.    No letters were sent and there was no rescission of the notice of sale recorded and sent to Mr. Koebel.

136.    None of them called Mr. Koebel back later that day or anytime thereafter to state that his home did not sell.

137.    So Mr. Koebel filed a suit for wrongfully foreclosing on his home alleging that Ocwen's statements that the sale was "cancelled" or "postponed" were false and fraudulent.

138.    After the state action was filed erroneously alleging Ocwen took his home by foreclosure sale on May 9, 2011, no one from Ocwen or the MTC FINANCIAL, INC., d/b/a TRUSTEE CORPS(the legal trustee) stepped up to inform Mr. Koebel or the state court that Mr. Koebel's assertions were untrue.

139.    Mr. Koebel's assertions in his state court papers were reasonable because the only writing he received one way or another after May 9, 2011 was the written notice dated May 9, 2011 that was posted on his dwelling which read:

NOTICE IS HEREBY GIVEN that on 5/9/2011 Riverhawk Property Management, LLC has purchased the property you currently occupy, located at:

255 Robinson Rd.

Pasadena, CA 91104

140.    By failing to disclose this material information to Plaintiff or the state court, they caused severe emotional distress to plaintiff and lulled him into a belief that

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

29

he was no longer obligated to make any payments on his home because they made it appear to him that he was no longer the home owner.

141.    In furtherance of this plan of deceit, Ocwen stopped mailing monthly mortgage statements to Mr. Koebel after May 9, 2011.

142.    Mr. Koebel called three representatives of Ocwen to determine if his home sold and followed up with Ocwen in writing thereafter.

143.    He filed a complaint alleging that his home sold at foreclosure auction on May 9, 2011 and served it on Ocwen and the legal trustee who conducted the sale.

144.    Plaintiff is informed and believes and alleges thereon that on May 9, 2011, Mr. Koebel was current on his monthly payments to Ocwen because he had just sent 3 cashier's checks to Ocwen in April 2011 which Ocwen cashed.

145.    As such, with the lack of monthly statements, the last known status of a sale of May 9, 2011 and no declaration that the sale did not occur in the demurrer that followed after Mr. Koebel initiated the state action, and the written notice posted on Mr. Koebel's door, Mr. Koebel reasonably relied on the silence and the written notice and did not make any further modified payments because he thought he was no longer the owner.

146.    As a result of Mr. Koebel's reliance, Ocwen recorded a Notice of Sale on November 21, 2011 for Mr. Koebel's failure to make his modified monthly payments.

*VERIFIED COMPLAINT*                            30
*Koebel v. MTC FINANCIAL, INC.*

147.     Because no new notice of default was filed and Ocwen did not comply with Cal. Civ. Code §2923.5, Mr. Koebel was never given the opportunity to cure the default, go through the process of initiating or exploring foreclosure alternatives (heightened escalation process for HAMP/HOPE/HARP review) specifically set up for persons in plaintiff's position, explore short sale, workout options or otherwise given the information on how to cure and reinstate the modified loan.

148.     Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiffs' reliance, which the unsuspecting Plaintiff justifiably relied upon, resulting in damage to his credit standing, loss of work/wages, attorney's fees and loss of his property.  Plaintiff was unaware of the true facts.

149.     Had Plaintiff known the true facts, Plaintiff, among other things, could have simply continued making his modified payments and surely would have explored his alternatives to foreclosure and not suffered as much emotional distress that go along with facing imminent homelessness.

150.     Defendants made the above-referenced false representations, concealments and non-disclosures with knowledge of the misrepresentations, intending to induce Plaintiffs' reliance, which the unsuspecting Plaintiff justifiably relied upon, resulting in the loss of his home to his financial damage and damage to his credit standing.

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

151.     The default created by the defendants conduct on the modified HAMP agreement also risked plaintiff of losing his permanent modification under HAMP and the favorable loan terms that go along with that.

152.     As a proximate result of defendants' conduct, plaintiffs have suffered general and special damages in an amount to be proven at trial, including attorney fees and his credit has been damaged. Plaintiff is entitled to rescission.

153.     The aforementioned conduct of defendant(s) was an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant(s) with the intention on the part of the defendant(s) of thereby depriving plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected plaintiff to a cruel and unjust hardship in conscious disregard of plaintiff's rights, so as to justify an award of exemplary and punitive damages.

Wherefore plaintiff demands judgment against defendants as set forth below.

## FIFTH CAUSE OF ACTION

## FOR PERRATA VIOLATION

## AS TO ALL DEFENDANTS

154.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 153, inclusive, as though fully set forth herein.

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

155.     Plaintiff held and now holds an interest in the Subject Property as the true owner. The basis of Plaintiff's title is a deed that was recorded in his favor and his continuing interest as the person in possession of Subject Property and is attached hereto as Exhibit A.

**156.**     As more particularly described above, Ocwen sent Mr. Koebel a permanent HAMP modification then never followed through (Exhibit C).

**157.**     Ocwen simply did not initiate exploration of foreclosure alternatives with the plaintiff after a Notice of Sale was recorded on the property on November 21, 2011 placing the plaintiff in imminent foreclosure. A true and correct copy of which is attached hereto as Exhibit D.

**158.**     Ocwen or their duly authorized *agent on* Ocwen's behalf, failed to comply with California Civil Code §2923.5 by failing, prior to recording a Notice of Default, to:

**a.** File a Notice of Default after the permanent modification was executed by Mr. Koebel,

**b.** Inform plaintiff of his options *to avoid* foreclosure,

**c.** Inform plaintiff of his right to conduct a meeting to review their financial information,

**d.** Inform plaintiff of his right to appoint an authorized agent to appear at this meeting, and

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

e. File the appropriate declaration with the County Clerk Recorder's office that accurately described the true facts as to Ocwen's lack of due diligence when it recorded its Notice of Sale.

159.     As a result of defendant's violation, defendant prematurely foreclosed on the plaintiff's home.

160.     As a result, Plaintiff is entitled to enjoin any foreclosure sale without the need to post a bond or tender any cure of a purported default to Ocwen.

161.     Plaintiff has been damaged by defendant's failure to comply with California Civil Code § 2923.5 and seek the remedy as provided by statute, including attorney's fees and costs.

Wherefore plaintiff demands judgment against defendants as set forth below.

## SIXTH CAUSE OF ACTION

## FOR BREACH OF PERMANENT MODIFICATION

## AS TO OCWEN

162.     Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 161, inclusive, as though fully set forth herein.

163.     California Civil Code Section 1550 provides that "[i]t is essential to the existence of a contract that there should be: 1) Parties capable of contracting; 2) Their consent; 3) A lawful object; and, 4) A sufficient cause or consideration."

*VERIFIED COMPLAINT*

*Koebel v. MTC FINANCIAL, INC.*

164.     As described above, within the past 4 years Mr. Koebel and Ocwen entered into **a written permanent modification** "Agreement" whereby the terms of Mr. Koebel's Deed of Trust and Note's terms were modified as stated in the attached Agreement. The Agreement constitutes a valid enforceable contract under California Civil Code Section 1550, as all the elements of a valid contract are present and there are no defenses to its enforcement

165.     Ocwen breached this Agreement by failing to perform the following acts: (1) record it with the County Recorder's office, (2) charging the 2% interest rate to Mr.Koebel's loan as stated in the written document.

166.     Plaintiff performed all of his obligations under the Agreement and patiently endured Defendants' ongoing delinquency and evasiveness, except for those acts that would be excused under the circumstances.

167.     Plaintiff mitigated its damages by lawfully inquiring as to the charges being applied to his loan as more particularly described above making the payments as specified and sending in all information requested like the Franchise tax lien release proof.

168.     California Civil Code section 3300 provides that "[f]or the breach of an obligation arising from contract, the measure of damages . . . is the amount which will compensate the party aggrieved for all the detriment proximately

caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

169.    As a result of Defendants' breach of duties under the Agreement, Plaintiff Mr. Koebel is wrongfully in default and has suffered in his credit rating.

170.    He has sustained damages in an amount to be determined at trial, plus attorney fees and costs for breaching the written modification to the deed of trust.

Wherefore plaintiff demands judgment against defendants as set forth below.

## SEVENTH CAUSE OF ACTION

## BREACH - PROMISSORY ESTOPPEL

## (AGAINST OCWEN)

171.    Plaintiffs incorporate in this cause of action all of the previous allegations, as though set forth in full herein.

172.    Plaintiff entered into the attached document purporting to be a  permanent modification agreement under HAMP  with Ocwen on November 24, 2010.

173.    California Code of Civil Procedure §2953 provides : " Any express agreement made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges conferred upon him by Sections 2924, 2924b,

*VERIFIED COMPLAINT*
*Koebel v . MTC FINANCIAL, INC.*

2924c of the Civil Code or by Sections 580a or 726 of the Code of Civil Procedure, shall be void and of no effect."

174.    Ocwen made the following promise to Mr. Koebel: "I understand that after I sign and return two copies of this Agreement to the Servicer (Ocwen), the Servicer will send me a signed copy of this Agreement."

175.    To his detriment, Mr. Koebel relied on this promise by executing the permanent modification and returning two copies of the Agreement to Ocwen. He then started making his payments of $1,344.95 as requested and which Ocwen cashed.

176.    Despite the promise to send a signed copy of this Agreement to Mr. Koebel, Ocwen refused to do so.

177.    Thereafter, on or about November 21, 2011 Ocwen caused a Notice of Sale to be recorded on Mr. Koebel's property under the original terms of loan unmodified.

178.    Defendants are now asserting that the modification cannot be enforced because Mr. Koebel does not have a *signed copy* from Ocwen and as such any enforcement violates the statue of frauds.

179.    Because defendants broke their promise, Mr. Koebel faces the loss of his home, disruption of his family's life, worry, anxiety, financial loss, including damage to his credit, and other emotional distress.

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

37

180.      Defendants should be estopped from using the statute of frauds defense in

enforcing the agreement.

181.      Alternatively, Mr. Koebel is entitled to rescission.

182.      As a further result of Ocwen's promise, Mr. Koebel is entitled to

compensatory damages for their financial loss, the loss of their home, damages

for emotional distress, an injunction barring defendants from going forward with

the sale, and an injunction ordering defendants to cancel the foreclosure sale,

notice of sale, and reinstate Mr. Koebel's modified home loan.

Wherefore plaintiff demands judgment against defendants as set forth below.

## EIGHTH CAUSE OF ACTION

## FOR DAMAGES FOR NEGLIGENCE AGAINST ALL DEFENDANTS

183.      Plaintiffs incorporate herein by reference the allegations made in paragraphs

1 through 182, inclusive, as though fully set forth herein.

184.      The foreclosing defendants had a duty to exercise reasonable care and skill

in timely and accurately responding to customer requests, maintaining accurate

loan records, properly servicing the loan, responding to inquiries in a reasonable

amount of time, offering foreclosure prevention services, and to stop all

foreclosure sales pending modification approval, and ensuring chain of title prior

to foreclosing.

*VERIFIED COMPLAINT*                       38
*Koebel v . MTC FINANCIAL, INC.*

185.    The foreclosing defendants went beyond their role as a silent lender and loan servicer by self-dealing.

186.    These standards have been placed in various regulations which are aimed at protecting a class of persons, which plaintiff is a member including those issued by the Federal Trade Commission which proscribe that all servicers must credit payments made as received.

187.    Defendants breached their duty owed to plaintiffs as generally described above, including but not limited to:

a.    Defendants breached their duty owed to plaintiffs as generally described above such as negligently failing to honor the permanent modification it presented to Mr. Koebel and wherein he accepted; then falsely making it appear that his home sold on May 9, 2011 in order to induce Mr. Koebel to stop making his modified payments under the permanent modification agreement;

b.    failing to correctly compute Mr. Koebel's payments and debt owed by placing his payments in a *suspense fund* instead of crediting the payments when they were received;

c.    Plaintiff is informed and believes and alleges thereon that Ocwen improperly calculated and applied the amounts being passed through the

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

39

suspense account which resulted in increased principal and interest payments on Mr. Koebel's loan than was actually due.

d. failing to record a notice of default before proceeding with a notice of sale on November 21, 2011 and thereby failing to communicate to Mr. Koebel what type of default his loan was under and for how much or what he needed to do in order cure it;

e. failing to post or mail the notice of sale recorded on November 21, 2011 to Mr. Koebel at least 20 days prior to the sale: Additionally, the Notice of sale was not posted on the property as required by Section 2924f of the California Civil Code or by sending notice in the mail as required by Section 2924b of the Civil Code.  Mr. Koebel only discovered the sale from a marketing flyer that arrived at his home on December 12, 2011 advertising his home by a third party looking to peddle their home saver services was going to be sold on December 23, 2011.

f. failing to correctly report the status and amount due on Mr. Koebel's loan to the credit reporting agencies, to the damage of Mr. Koebel's credit.

188.     As a proximate result of the defendant's conduct, Philip Koebel suffered emotional distress. He suffered from headaches, weight fluctuations, insomnia, nausea, feeling of powerlessness, emotional outbursts, agitation, inability to

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

concentrate, panic, anxiety, and depression, all causing a great stress on his family and his affairs.

189.     As a result of defendants conduct, plaintiff was generally damaged in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

## FOR DAMAGES FOR VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.

## AS TO ALL DEFENDANTS

190.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 189, inclusive, as though fully set forth herein.

191.     California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

192.     Specifically, Defendants engage in deceptive business practices with respect to mortgage loan servicing, foreclosure of residential properties and related matters by:

a. Defendants Ocwen and MTC took advantage of capitalizing on a loan Ocwen was servicing on behalf of Taylor Bean and Freddie Mac and the investigations and indictments and used that situation to commit a fraud

*VERIFIED COMPLAINT*

*Koebel v. MTC FINANCIAL, INC.*

41

upon  Mr. Koebel.  For example, Ocwen never disclosed to Mr. Koebel

that Freddie Mac owned his loan.  Freddie Mac has its own rules and

forms for HAMP modifications.  Neither the TPP nor the permanent

modification disclosed they were GSE programs under Freddie Mac.

Ocwen and MTC concealed Freddie Mac's existence in the land records

too. Nowhere is Freddie Mac mentioned in the land record. No notice was

sent in violation of TILA 131g requiring a duty to disclose.  Ocwen was

Freddie Mac's agent that was given the duty to disclose. As such, plaintiff

did not discover he had a Freddie Mac owned loan until December 2011

by going on the Freddie Mac website.  This in conjunction with the secret

sale attempt caused injury to Mr. Koebel through lost time at researching

the fraud, attorney fees and costs associated therewith and Mr. Koebel is

informed and believes that this is all in retaliation because he is an

attorney fighting for consumer rights and equal access to the courts

through the bankruptcy protections afforded other California residents.

b. Improperly stating that Mr. Koebel was in default due to failure to pay a

tax lien under the HAMP modification agreement and then proceeding to

inform him a sale would go forward on May 9, 2010 on the purported

basis. Said sale would have been in violation of Cal. Civ. Code §2924

which requires the Notice of Default particularly describe the default

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

before a sale can go forward. *Anderson v Heart Fed. Sav.*, 208 Cal.App.3d 202 (1989) The Notice of Default recorded on 6/1/09 which was the only recorded Notice of Default in this case, was only for failure to make payments and did not particularly describe a franchise tax lien (nor could it as the tax lien did not even exist in 2009).

c. Defendant Ocwen violated Cal. Civil Code §2954 and 12 U.S.C. §2609 by charging excess tax impound fees.   For example, Ocwen impounded $259.86 per month for real property taxes for 2011 after Mr. Koebel entered into his permanent modification with Ocwen on November 24, 2010.  Mr. Koebel's actual annual tax liability for 2011 is $2476.77 according to the Los Angeles County Treasurer and Tax Collector website.  Ocwen violated 12 U.S.C. §2609 and Cal Civ Code §2954 which forbids Ocwen from collecting over one-sixth of the actual property tax due in an impound account. Here one sixth of $2,476.77 was only $412.79 that Ocwen could overcharge Mr. Koebel. But Ocwen required an impound of $3,118.32, or $641.55 *in* excess of the actual real property tax payment for 2011 from Mr. Koebel by impounding $259.86 per month as represented in the written modification agreement attached hereto. As a result of Koebel's violation of this law, Mr. Koebel was overcharged by approximately $228.76 that could have been applied to his principal and

interest that year instead of sitting in the suspense account and Mr. Koebel is due statutory damages as allowed under Cal Civ Code §2954. Plaintiff is informed and believes and alleges thereon that Ocwen has a pattern and practice of violating the impound law in California and this is only an example thereof. As a further result of Ocwen's conduct, the impound account was voidable in 2010 and remains so today.

d.  Failing to record the Notice of Rescission of Notice of Default recorded on 6/1/09 in violation of California Civil Code section 2924c(a)(2) within 30 days of Mr. Koebel executed the HAMP permanent modification and returned it to Ocwen on November 24, 2010.

e.  Fraudulently inducing Mr. Koebel into defaulting on his HAMP permanent modification on or about May 9, 2011 by making it appear that he lost his home through a foreclosure sale. Thereafter, to bolster this illusion Ocwen failed to send monthly mortgage payment statements to Mr. Koebel or correct him in his assumptions that he was no longer the homeowner.

f.  Failing to post or send the Notice of Sale or the publication thereof to Mr. Koebel by registered or certified mail at least 20 days before the December 23, 2011 foreclosure auction sale in violation of Cal Civ. Code §2924b(b)(2) and §2924.8. Additionally, the Notice of sale was not posted

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

on the property as required by Section 2924f of the California Civil Code or by sending notice in the mail as required by Section 2924b of the Civil Code. Mr. Koebel only discovered the sale from a marketing flyer that arrived at his home on December 12, 2011 advertising his home by a third party looking to peddle their home saver services was going to be sold on December 23, 2011.

g. Ocwen or its duly authorized agent failed to comply with California Civil Code §2923.5 by failing, 30 days prior to recording a Notice of Default for the December 23, 2011 sale, to:

(1) Inform plaintiff of his options to avoid foreclosure,

(2) Inform plaintiff of his right to conduct a meeting to review their financial information,

(3) Inform plaintiff of his right to appoint an authorized agent to appear at this meeting, and

(4) File the appropriate declaration with the County Clerk Recorder's office that accurately described the true facts as to Ocwen's lack of due diligence. As a result of defendant's violation, defendant prematurely foreclosed on the plaintiff's home.

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

193.     As more fully described above, Defendants' acts and practices are likely to deceive the public, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

194.     Defendants fail to act in good faith and respond to borrower's communications and requests in compliance with applicable law.

195.     Moreover, Defendants engage in a uniform pattern and practice of unfair and overly-aggressive servicing that result in the unwarranted civil harassment and emotional duress of distressed homeowners.  The scheme implemented by Defendants is designed to defraud California consumers and enrich Defendants.

196.     The foregoing acts and practices have caused substantial harm to California consumers.

197.     As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of Defendants, Plaintiffs and California consumers have suffered and will continue to suffer financial losses such as those described by this plaintiff.

198.     Plaintiffs are further informed and believe and allege thereon that defendants' unlawful, unfair and fraudulent business practices are likely to deceive the public and are likely to continue to induce members of the public into relying to their detriment on statements and agreements made by Ocwen leading the public to believe that they will receive a permanent HAMP loan

*VERIFIED COMPLAINT*

*Koebel v. MTC FINANCIAL, INC.*

modification when in fact, shortly thereafter the defendants will use deceitful tactics to ensure the borrower's default, creating a financial gain to the defendants to the borrower's detriment.

199.     The foregoing acts and practices have caused substantial harm to California consumers.

200.     As a direct and proximate cause of the unlawful, unfair and fraudulent acts and practices of Defendants, Plaintiffs and California consumers have suffered and will continue to suffer financial losses such as those described by this plaintiff.

201.     By reason of the foregoing, Defendants have been unjustly enriched and should be required to pay for all damages caused by their conduct, remediate all credit damage created thereby, and make restitution to Plaintiffs and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204.  Additionally, Plaintiffs are therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment** against defendants, and each of them, as follows:

*VERIFIED COMPLAINT*                                   47

*Koebel v . MTC FINANCIAL, INC.*

**A.** Declaratory and injunctive relief;

**B.** To enjoin any foreclosure sale of the Subject Property;

**C.** For a declaration of the rights and duties of the parties, specifically that the foreclosure of the Subject Property was wrongful;

**D.** To vacate and set aside the Notice of Sale, Notice of Default or other recording as appropriately determined;

**E.** Pursuant to Business and Professions Code § 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

**F.** Actual, Special and General Damages as proven at trial;

**G.** Statutory damages and civil penalties;

**H.** Disgorgement of profits;

**I.** Costs of this action, including the fees and costs of experts;

**J.** Attorneys' fees;

**K.** Prejudgment interest at the statutory rate;

**L.** Post-judgment interest;

**M.** Exemplary and Punitive Damages; and

**N.** Such other and further relief as this Court finds necessary and proper.

*VERIFIED COMPLAINT*

*Koebel v . MTC FINANCIAL, INC.*

48

Dated:  December 21, 2011          Respectfully Submitted,
                                    LAW OFFICES OF LENORE ALBERT


                                    /s/ Lenore Albert *Lenore L. Albert*
                                    LENORE L. ALBERT, ESQ.
                                    Attorney for Plaintiff, PHILIP KOEBEL


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial.

Dated:  December 21, 2011          Respectfully Submitted,
                                    LAW OFFICES OF LENORE ALBERT


                                    /s/ Lenore Albert *Lenore L. Albert*
                                    LENORE L. ALBERT, ESQ.
                                    Attorney for Plaintiff, PHILIP KOEBEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I am the plaintiff in this action; the foregoing complaint is true of my knowledge, except as to the matters stated in it on my *information* or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 21, 2011

*See attached*

PHILIP KOEBEL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VERIFICATION

I am the plaintiff in this action; the foregoing complaint is true of my knowledge, except as to the matters stated in it on my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 21, 2011

PHILIP KOEBEL

*VERIFIED COMPLAINT*
*Koebel v. MTC FINANCIAL, INC.*

# EXHIBIT A

RECORDING REQUE~ BY

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHER-
WISE SHOWN BELOW MAIL TAX STATEMENTS TO

NAME
ADDRESS
CITY &
STATE
ZIP

MR. & MRS. KOEBEL
255 ROBINSON
Pasadena, CA 91104

Title Order No. 1435631 Escrow No. 13629

94

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
MAR 28 1994 AT 8 A.M**

FEE $10

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

The undersigned declares that the documentary transfer tax is $ __0: NO CONSIDERATION__ and is
computed on the full value of the interest or property conveyed, or is
computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale. The land,
tenements or realty is located in
unincorporated area    X city of   PASADENA                                  and

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

   PHILIP E. KOEBEL, A SINGLE MAN AS TO AN UNDIVIDED 1/2 INTEREST AND
   EDYE C. UDELL, A SINGLE WOMAN AS TO AN UNDIVIDED 1/2 INTEREST AS*
hereby GRANT(S) to

   PHILIP E. KOEBEL AND EDYE C. UDELL, HUSBAND AND WIFE AS JOINT TENANTS

the following described real property in the   CITY OF PASADENA
County of LOS ANGELES                       , State of California:

   *TENANTS IN COMMON

   LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHBIT "A"

Dated MARCH 9, 1994

PHILIP E. KOEBEL

EDYE C. UDELL

STATE OF CALIFORNIA
COUNTY OF ___ } S.S.

On ___ before me,
___ personally
appeared ___

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

Signature ___

FOR NOTARY SEAL OR STAMP

**SHAUN KEARNEY
COMMISSION #984518
Notary Public - California
ORANGE COUNTY
My Commission Expires
FEBRUARY 19, 1997**

MAIL TAX STATEMENTS TO PARTY SHOWN ON FOLLOWING LINE; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

Order No: 210-1335637-276                                    Reference No.:

EXHIBIT A

LOT 18 OF TRACT NO. 6431, IN THE CITY OF  PASADENA, COUNTY OF  LOS ANGELES,
STATE OF CALIFORNIA, AS  PER MAP RECORDED IN BOCK 104  PAGES  95 AND 96 OF
MAPS, IN THE OFFICE OF THE COUNTY RECORDER CF SAID COUNTY.

ASSESSOR PARCEL NO.: 5729-009-016

94   597891

UATE

AND WHEN RECORDED MAIL THIS DEED AND, UNLESS
OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO:

95 1168602

Philip E. Koebel
255 Robinson Court
Pasadena, CA 91104

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

9:21 AM  JUL 19 1995

FEE
$7

SPACE ABOVE THIS LINE FOR RECORDER'S USE

| 5729 | 009 | 016 | ALL | |
| | | | PIN | |

Title Order No. ___14·57312·___
Escrow or Loan No. ___3-1525___

# INTERSPOUSAL GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
THERE IS NO CONSIDERATION FOR THIS TRANSFER and it is exempt from Documentary Transfer Tax pursuant to
§11911 of the Revenue and Taxation Code.

This is an INTERSPOUSAL TRANSFER and this transfer is exempt from reassessment pursuant to §63 of the Revenue
and Taxation Code.

☐ From joint tenancy to community property.

☐ From one spouse to both spouses.

☒ From one spouse to the other spouse.

☐ From both spouses to one spouse.

☐ Other _____

THIS CONVEYANCE
ESTABLISHES TITLE AND
SEPARATE PROPERTY OF A
SPOUSE R&T 11911

GRANTOR:

EDYE C. UDELL,   AN UNMARRIED WOMAN, FORMER SPOUSE OF GRANTEE
hereby GRANT(S) to

PHILIP E. KOEBEL, AN UNMARRIED MAN

the following described real property in the county of Los Angeles_____, State of California

Lot 18 of Tract No. 6431, in the City of Pasadena, as per map recorded in Book 104,
Pages 95 and 96 of Maps in the office of the County Recorder of said County.
5729-009-016

DATED: ___June 15, 1995_____

STATE OF CALIFORNIA
COUNTY OF _Los Angeles_ } SS.

On _June 02 1995_ before me, _Marjorie
Gaddard, Notary Public_
personally appeared _Edye C. Udell_

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/
their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

_Edye C. Udell_

(This area for official notarial seal)

EXHIBIT B

 **HELPING YOU STAY IN YOUR HOME.** MAKING HOME AFFORDABLE 

 OCWEN

7/20/2010

Philip Koebel

Pasadena, CA 91109

7080‑

Dear Philip Koebel,

Congratulations! You are approved to enter into a trial period plan under the Home Affordable Modification Program. This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

What you need to do...
To accept this offer, you must make new monthly "trial period payments" in place of your normal monthly mortgage payment. Send your monthly trial period payments—instead of your normal monthly mortgage payment—as follows:

1st payment: $ $1,344.85 by 9/1/2010
2nd payment: $ $1,344.85 by 10/01/2010
3rd payment: $ $1,344.85 by 11/01/2010

After all trial period payments are timely made and you have submitted all the required documents, your mortgage would then be permanently modified. (Your existing loan and loan requirements remain in effect and unchanged during the trial period.) If each payment is not received by OCWEN in the month in which is due, this offer will end and your loan will not be modified under the Making Home Affordable program.

If you have any questions or if you cannot afford the trial period payments shown above but want to remain in your home, or if you have decided to leave your home but still want to avoid foreclosure, please call us at 1-800-746-2936 as we may be able to help you. (Also, please review the attached "Frequently Asked Questions!")

Sincerely,

OCWEN Loan Servicing, LLC

Attachments: (2) Frequently A...        Questions, D A... er na...n... E... ...d... ... ...tium of... begal for... atspid?e...        ...ed... ...tule[s] and ...tion

[The below information is from a debt collector attempting to collect a debt, any information obtained will be used for that purpose...]

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

Freddie Mac Form 3317  04/09  Page 1 of 4

 Get the answers you need to some of the most common questions.

**Q.  What else should I know about this offer?**

- If you make your new payments timely and submit the paperwork by the deadline, we will not conduct a foreclosure sale.
- You will not be charged any fees for this Trial Period Plan or final modification.
- If your loan is modified, we will waive all unpaid late charges.
- Your credit score may be affected by accepting a trial period plan or modification. For more information about your credit score, go to http://www.ftc.gov/bcp/edu/pubs/consumer/credit/cre24.shtm.
- You may be required to attend credit counseling.

**Q.  Why is there a trial period?**

The trial period offers you immediate payment relief (and could prevent a foreclosure sale) while we process your paperwork to determine if you qualify for a permanent loan modification. It also gives you time to make sure you can manage the lower monthly mortgage payment. Note: This is only a temporary Trial Period Plan. Your existing loan and loan requirements remain in effect and unchanged during the trial period.

**Q.  How was my new payment in the trial period determined?**

Your trial period payment is approximately 31% of your total gross monthly income, which you told us was $4,535.44. The new payment includes principal and interest and an escrow amount of $259.86 to pay property taxes, insurance and other permissible escrow fees. If we were able to modify your loan too, based on the information you gave us, we estimate your modified interest rate would be 2.000%. If we modify your loan permanently after the trial period, the interest rate may be different due to a variety of factors that affect the terms of your final modification. If you did not have an escrow account before, the timing of your tax and insurance bills may require that you make a payment to cover any such bills when they come due. This is known as an escrow shortage. Your loan has an escrow shortage of $199.31; this can either be paid in a lump sum when the loan is modified or over the next 60 months. If you wish to pay the total shortage as a lump sum, please contact us.

**Q.  When will I know if my loan can be modified permanently and how will the modified loan balance be determined?**

Once we confirm you are eligible for a Home Affordable Modification and you make all of your trial period payments on time, we will send you a modification agreement detailing the terms of the modified loan. Any difference between the amount of the trial period payments and your regular mortgage payments will be added to the balance of your loan along with any other past due amounts as permitted by your loan documents. While this will increase the total amount that you owe, it should not significantly change the amount of your modified mortgage payment as that is determined based on your total monthly gross income, not your loan balance.

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

 Get the answers you need to some of the most common questions

**Q.  Are there incentives that I may qualify for if I am current with my new payments?**

Once your loan is modified, you can earn a pay-for-success incentive for every month that you make on-time payments beginning with the trial period payments. Depending on your modified monthly payment, you may accrue up to $1,000 each year for five years for a total of $5,000. This important benefit, *which will be applied to your principal balance each year after the anniversary date of your first trial period payment due date,* will help you earn equity in your home by reducing the amount that you owe. However, you must remain current on your loan. You will lose this benefit if your modified loan becomes 90 days delinquent at any time during this five year period. If you lose this benefit, you will lose all accrued, unapplied incentive payments.

**Q.  Will my interest rate and principal and interest payment be fixed after my loan is permanently modified?**

Once your loan is modified, your interest rate and monthly principal and interest payment will be fixed for the life of your mortgage underline{unless} your initial modified interest rate is below current market interest rates. In that case, the below market interest rate will be fixed for five years. At the end of the fifth year, your interest rate may increase by 1% per year until it reaches a cap. The cap will equal the market rate of interest being charged by mortgage lenders on the day your modification agreement is prepared (the Freddie Mac Primary Mortgage Market Survey Rate for 30-year, fixed-rate conforming mortgages). Once your interest rate reaches the cap it will be fixed for the remaining life of your loan. Like your trial period payment, your new monthly payment will also include an escrow for property taxes, hazard insurance and other escrowed expenses. If the cost of your homeowners insurance, property tax assessment or other escrowed expenses increases, your monthly payment will increase as well.

**Q.  What if I other questions about Home Affordable Modification that cannot be answered by my mortgage servicer?**

Call the Homeowner's HOPE™ Hotline at 1-888-995-HOPE (4673). This Hotline can help with questions about the program and offers access to free HUD-certified counseling services in English and Spanish.


888-995-HOPE
Homeowner's HOPE Hotline

**Q.  What if I am aware of fraud, waste, mismanagement or misrepresentations affiliated with the Troubled Asset Relief Program?**

Please contact SIGTARP at 1.877.SIG.2009 (toll-free), 202.622.4559 (fax) or www.sigtarp.gov. Mail can be sent to: Hotline Office of the Special Inspector General for Troubled Asset Relief Program, 1801 L Street NW, Washington, DC 20220.



This communication is from a debt collector attempting to collect a debt, any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended to and does not constitute an attempt to collect a debt.

Freddie Mac Form 1127  02/09  Page 4 of 4



Here is some information about the Home Affordable Modification Program

## Additional Trial Period Plan Information and Legal Notices

The terms of your trial period plan below are effective on the day you make your first trial period payment, provided you have paid it on or before 9/30/2010. You and we agree that:

We will not proceed to foreclosure sale during the trial period, provided you are complying with the terms of the trial period plan, except as detailed below:

- During the trial period, any pending foreclosure action or proceeding will not be dismissed and may be immediately resumed if you fail to comply with the terms of the trial period plan or do not qualify for a modification. A new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will not be necessary to continue the foreclosure action (foreclosure notices). You waive any and all rights to receive such foreclosure notices to the extent permitted by applicable law. However, if your property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and foreclosure may proceed if you do not make each and every trial period payment that Is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. For example, if a foreclosure sale is scheduled in February and you do not make your January and any earlier required trial period payment by the end of January, the foreclosure sale may proceed in these four states. If a foreclosure sale occurs pursuant to this provision, the trial period plan will be deemed to have terminated.

During the trial period, we may accept and post your trial period payments to your account and it will not affect foreclosure proceedings that have already been started.

- The servicer's acceptance and posting of your new payment during the trial period will not be deemed a waiver of the acceleration of your loan or foreclosure action and related activities, and shall not constitute a cure of your default under your loan unless such payments are sufficient to completely cure your entire default under your loan.

If your monthly payment did not include escrows for taxes and insurance, you are now required to do so:

- You agree that any prior waiver that allowed you to pay directly for taxes and insurance is revoked. You agree to establish an escrow account and to pay required escrows into that account.

Your current loan documents remain in effect; however, you may make the trial period payment instead of the payment required under your loan documents:

- You agree that all terms and provisions of your current mortgage note and mortgage security instrument remain in full force and effect and you will comply with these terms; and that nothing in the trial period plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the loan documents.

Active Chapter 7 or Chapter 13 Bankruptcy:

- If your loan is in an active Chapter 7 or Chapter 13 Bankruptcy case, in order for us to finalize your modification you must make all of your trial payments and obtain approval from the Bankruptcy court. The approval or consent order is required BEFORE Ocwen can covert your trial plan into a permanent modification.

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

# EXHIBIT C

Investor Loan # _____

After Recording Return To:

_____
_____
_____
_____

This document was prepared by _____

_____ [Space Above This Line For Recording Data] _____

## HOME AFFORDABLE MODIFICATION AGREEMENT
# (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): Philip Koebel

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"):6/27/2008

Loan Number: 7080▆▆▆

Property Address:      255 Robinson Road Pasadena, CA 91104 ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      My Representations. I certify, represent to Servicer and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  I live in the Property as my principal residence, and the Property has not been condemned;

    C.  There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

OLS Form (rev. 8/09)

Loan Number 70804000

HMPFA

G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

H. In cases where I received a discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Servicer agrees, based on this representation, that I will not have personal liability on the debt pursuant to this Agreement.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Agreement; .

B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that m representations in Section 1 are no longer true and correct, the Loan Documents will not be modifie and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedie provided by the Loan Documents; and

C. I understand that the Loan Documents will not be modified unless and until (i) I receive from th Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (a defined in Section 3) has occurred. I further understand and agree that the Servicer will not b obligated or bound to make any modification of the Loan Documents if I fail to meet any one of th requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and al preconditions to the modification set forth in Section 2 have been met, the Loan Documents wil automatically become modified on 12/1/2010 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 12/1/2010.

A. The new Maturity Date will be: 11/1/2050.

B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $414,520.56 (the "New Principal Balance").

C. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 12/1/2010 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 12/1/2010. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | *Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|------------------------------------------------|-------------------------------|-----------------------|-------------------|----------------------------|
| 1-5 | 2.000% | 12/1/2010 | $1,085.09 | $259.86, adjusts annually after year 1 | $1,344.95, adjusts annually after year 1 | 12/1/2010 | 60 |
| 6 | 3.000% | 11/1/2015 | $1,260.62 | Adjusts annually | Adjusts annually |  |  |
| 7 | 4.000% | 11/1/2016 | $1,445.90 | Adjusts annually | Adjusts annually | 12/1/2015 | 12 |
| 8-Loans Maturity | 4.625% | 11/1/2017 | $1,565.50 | Adjusts annually | Adjusts annually | 12/1/2016 | 12 |
|  |  |  |  |  |  | 12/1/2017 | 396 |
| - | - | - | - | - | - | - | . |

Page 2 of 6

OLS Form (rev. 8/09)

Loan Number 70804000

HMPFA

\*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.D.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These Items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in

the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D. Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA.

OLS Form (rev. 8/09)

Loan Number 70804000

Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimate of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, Instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.  That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Servicer exercises this option, Servicer shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.  That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.  If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

Loan Number 70804000        HMPFA

K. That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void

L. Corrections and Omissions. You agree to execute such other and further documents as may be reasonab necessary to consummate the transactions contemplated herein or to perfect the liens and

M. security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms here is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to yo and this Agreement will be void upon notice of such error. Should you elect not to sign any such correcte Agreement, your loan will revert to the terms of your original Loan Documents.

N. Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws o Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. I cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law o custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose an sell the Property; and to take any action required of Servicer including, but not limited to, releasing and cancelling the mortgage loan.

💬 *If this box is checked. Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → _____    _11_ , _24_ , _2010_ Date
       Phillip Koebel

State of California
County of _Los Angeles_      )
On _November 24th, 2010_ before me, _Sasha Jerez, Notary Public_ personally appeared
_Philip Kiebel_ _____ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that
he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)
Print Name _Sasha Jerez_

Personally Known_____ OR Produced Identification_____
Type of Identification Produced_____

SASHA JEREZ
Commission # 1741293
Notary Public - California
Los Angeles County
My Comm. Expires Apr 23, 2011

Sign Here → _____ ____ / ____ / ____ Date

State of California
County of_____ )
On _____ before me, _____ personally appeared
_____ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that
he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Signature _____ (Seal)
Print Name:_____

Personally Known_____ OR Produced Identification_____
Type of Identification Produced_____

OLS Form (rev. 8/09)

Loan Number 70804000

*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.

HMPFA

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here → _____          _____/_____/_____ Date

State of California                    )
County of _____      )
On _____ before me, _____personally appeared _____,who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Signature _____
Print Name:_____ (Seal)

Personally Known_____OR Produced Identification_____
Type of Identification Produced_____

Sign Here → _____          _____/_____/_____ Date

State of California                    )
County of _____      )
On _____ before me, _____personally appeared _____,who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct. WITNESS my hand and official seal.
Signature _____
Print Name:_____ (Seal)

Personally Known_____OR Produced Identification_____
Type of Identification Produced_____

Servicer _____    BY _____
Date _____

If applicable: _____
Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

Page 6 of 6

OLS Form (rev. 8/09)

**CASHIER'S CHECK**

**Financial**
CREDIT UNION

BRANCH                          2
Check Number:                   13837
Name:                           KOEBEL,PHIL
Effective Date:                 04/06/11
Post Date:                      04/06/11
Teller:                         0013
Purpose:                        P. KOEBEL #0
Dollar Amount:                  1.344.95

OCWEN

DO NOT CASH IF THIS DOCUMENT DOES NOT HAVE A LARGE FAINT IMAGE OF THE CREDIT UNION LOGO OVER A FADING PATTERN OF THE CREDIT UNI

**Financial**
CREDIT UNION

1520 W. COLORADO BLVD.
PASADENA, CA 91105
800.894.1200

16-7756
3220

01 000001383

| DATE | VOID AFTER 180 DAYS |
|------|---------------------|
| 04/06/11 | $1,344.95 |

Pay:   ***ONE THOUSAND THREE HUNDRED FORTY-FOUR DOLLARS AND 95 CENTS*****

PAY
TO THE        OCWEN
ORDER
OF

**CASHIER'S CHECK**

MEMO:   P. KOEBEL #007080■■■ MARCH/2011

_Barbara L. Nace_
Authorized Signature

THIS DOCUMENT MUST HAVE AN ARTIFICIAL WATERMARK VISIBLE ON BACK WHEN HELD AT AN ANGLE. MICRO PRINTING (MP) IN SIGNATURE LINE

⑈00000⅊3837⑈ ⑊:32207■■■ 35000033⑈

**CASHIER'S CHECK**

```
BRANCH                    2
Check Number:             13836
Name:                     KOEBEL,PHIL
Effective Date:           04/06/11
Post Date:                04/06/11
Teller:                   0013
Purpose:                  P.KOEBEL #0
Dollar Amount:            1.344.95
```

**Financial**
CREDIT UNION

OCWEN

---

DO NOT CASH IF THIS DOCUMENT DOES NOT HAVE A LARGE FAINT IMAGE OF THE CREDIT UNION LOGO OVER A FADING PATTERN OF THE CREDIT U

**Financial**
CREDIT UNION

1520 W. COLORADO BLVD.
PASADENA, CA 91105
800.894.1200

16-7756
3220

01 00000138

| DATE |
|------|
| 04/06/11 |

VOID AFTER 180 DAYS

$1,344.95

Pay:  ***ONE THOUSAND THREE HUNDRED FORTY FOUR DOLLARS AND 95 CENTS*****

**CASHIER'S CHEC**

PAY
TO THE
ORDER
OF

OCWEN

MEMO:  P.KOEBEL #007080      -FEB/2011

Barbara L. Wall
Authorized Signature

THIS DOCUMENT MUST HAVE AN ARTIFICIAL WATERMARK VISIBLE ON BACK WHEN HELD AT AN ANGLE. MICRO PRINTING (MP) IN SIGNATURE LI

⑆00000̅13836⑆ ⑉3220⑉       35000033⑈

**OFFICIAL CHECK**



**Financial**
CREDIT UNION

BRANCH
Check Number:           2
Name:                   117529
Effective Date:         KOEBEL,PHIL
Post Date:              04/06/11
Teller:                 04/06/11
Purpose:                0013
Dollar Amount:          PHILIP KOEB
                        1,344.95

OCWEN

DO NOT CASH IF THIS DOCUMENT DOES NOT HAVE A LARGE FAINT IMAGE OF THE CREDIT UNION LOGO OVER A FADING PATTERN OF THE CREDIT UN

**Financial**
CREDIT UNION

1520 W. COLORADO BLVD.
PASADENA, CA 91105
800.894.1200

16-7766
3220

00 000011752

DATE
04/06/11

VOID AFTER 180 DAYS

$1,344.95

Pay:  ***ONE THOUSAND THREE HUNDRED FORTY FOUR DOLLARS AND 95 CENTS*****

PAY
TO THE
ORDER
OF          OCWEN

**OFFICIAL CHECK**

MEMO:   PHILIP KOEBEL #007080■■■ APRIL/2011

Authorized Signature

THIS DOCUMENT MUST HAVE AN ARTIFICIAL WATERMARK VISIBLE ON BACK WHEN HELD AT AN ANGLE. MICRO PRINTING (MP) IN SIGNATURE LINE

⑆0000117529⑆ ⑈32207■■■ 35000059⑆

# EXHIBIT D

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

Trustee Corps
17100 Gillette Avenue
Irvine, CA 92614

Trustee Sale # CA0941443-1   Loan# 70804000    Order # 55005649     [Space above this line for recorder's use only]

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 06/23/2008, UNLESS YOU TAKE ACTION TO PROTECT YO
PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF T
PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 12/23/2011 at 11:00AM, MTC FINANCIAL INC., dba TRUSTEE CORPS as the duly appointed Substituted Trustee under
pursuant to Deed of Trust Recorded on 06/30/2008 as Document No. 200811██████of official records in the Office of the Reco
of Los Angeles County, CALIFORNIA, executed by, PHILIP E KOEBEL, AN UNMARRIED MAN, as Trustor, TAYLOR, BEA
WHITAKER MORTGAGE CORP., as Beneficiary,

WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the Un
States, by cash a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a ch
drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of
Financial Code and authorized to do business in this state). AT: BY THE FOUNTAIN LOCATED AT 400 CIVIC CENTER PLA
POMONA, CA 91766

The property heretofore described is being sold "as is". All right, title and interest conveyed to and now held by it under said Dee
Trust in the property situated in said County and State describing the land therein: APN # 5729-0█████

AS MORE FULLY DESCRIBED ON SAID DEED OF TRUST.

LOT 18 OF TRACT 6431, IN THE CITY OF PASADENA, AS PER MAP RECORDED IN BOOK 104, PAGE(S) 95 AND 96 i
MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

The street address and other common designation, if any, of the real property described above is purported to be:

255 ROBINSON ROAD, PASADENA, CA 91104

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if an
shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession,
encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided
said Note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of t
trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold er
reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale i
$441,633.33 (estimated amount). Accrued interest and additional advances, if any, will increase this figure prior to sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusiv**
**remedy shall be the return of monies paid to the Trustee and the successful bidder shall have n**
**further recourse.**

The Beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default an
Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election t
Sell to be recorded in the County where the real property is located and more than three months have elapsed since suc
recordation.

Trustee Sale # CA0941443-1   Loan# 70804000   Order # 55005649

Dated: 11/17/2011

MTC FINANCIAL INC., DBA TRUSTEE CORPS, as Successor Trustee

By: ROWENA PAZ, TRUSTEE SALES OFFICER

TRUSTEE CORPS

17100 Gillette Ave, Irvine, CA 92614

FOR SALE INFORMATION CONTACT: (714)730-2727, (949) 252-8300

FOR REINSTATEMENT / PAY OFF REQUESTS CONTACT:  (949) 252-8300          RPRequests@trusteecorps.com

Trustee Corps is a debt collector.
All information obtained will be
used for that purpose.

**NOTICE OF SALE**
**PURSUANT TO SECTION 2924.8 OF THE CIVIL CODE**

Foreclosure process has begun on this property, which may effect your right to continue to live in this property. Twenty days or more after the date of this notice, this property may be sold at foreclosure. If you are renting this property, the new property owner may either give you a new lease or rental agreement or provide you with a 60-day eviction notice. However, other laws may prohibit an eviction in this circumstance or provide you with a longer notice before eviction. You may wish to contact a lawyer or your local legal aid or housing counseling agency to discuss any rights you may have.

出售公告
依据民法典第2924.8节

因本房产的赃进程序已经开始，这可能会影响您在此继续居住的权利。从本通知起的二十天后。本房产可能会被出售。如果你是租房户，新的房主可能给你新的出租协议，或通知您在60天内搬房。但有些法律可能禁止在此情况下的清房。或可为您提供更长的搬家期限。您可以与您的律师，您当地的法律援助或房屋咨询机构讨论您的有关权利。

매매 공고
민법 제 2924.8 항에 의거

이 건물에 대한 차압 절차가 시작되었으며, 그로 인해 귀하가 이 건물에서 계속해서 거주할 수 있는 권리에도 영향이 미칠 수 있습니다. 이 공고문의 날짜로부터 20일 혹은 그 후에, 이 건물은 차압 매매될 수 있습니다. 만약 귀하가 이 건물을 임차하고 있다면, 새로운 건물 소유주는 귀하와 새임대차 계약을 하거나 또는 60일 이내 퇴거하라는 동고를 할 수 있습니다. 그러나, 다른 법률들은 이런 상황에서의 퇴거를 금지하거나 또는 귀하에게 퇴거하기 전까지 연장된 기간의 공고는 하도록 할 수도 있습니다. 귀하의 권리에 대한 상담은 하기 위해 귀하는 변호사 또는 귀하가 있는 지역의 법률 구호 기관 혹은 주택 상담 기관에 연락할 수도 있습니다.

**ANUNCIO DE VENTA**
**SEGÚN LA SECCIÓN 2924.8 DEL CÓDIGO CIVIL**

El proceso de ejecución de hipoteca ha comenzado en esta propiedad, lo que puede afectar su derecho de vivir en esta propiedad. La propiedad puede ser vendida en ejecución de hipoteca veinte días o más después de la fecha de este aviso. Si usted está rentando esta propiedad, el nuevo dueño de la propiedad puede darle a usted un nuevo contrato de arrendamiento o alquiler o darle un aviso de desalojo de 60-días. Sin embargo, otras leyes tal vez puedan prohibir un desalojo en esta circunstancia o proveerle a usted un aviso de desalojo de más tiempo para que desaloje la propiedad. Tal vez usted desee comunicarse con un abogado o su ayuda legal de la localidad o agencia de consejería de vivienda para hablar de cualquier derecho que usted tal vez tenga.

**PAUNAWA SA PAGBENTA**
**BATAY SA SEKSYON 2924.8 NG NILAGDAANG SIBIL**

Ang proseso ng pagreremata ay nagsimula na sa pag-aaring ito, na kung saan ay maaaring makaapekto sa inyong-karapatan na lutuyang manirahan sa pag-aaring nabanggit. Dalawampung araw o higit pa matapos ang petsang naisagawa ang paunawang ito, ang nasabing pag-eari ay maaari nang ibenta batay sa pagremata. Kung kayo ay nangungupahan sa pag-aaring ito, ang bagong may-ari ay maaaring magbigay ng bagong kasunduan sa paghiram o pagbenta o bigyan kayo ng kasulaten na paunawa na makakllpat sa loob ng 60 na araw. Gayunpaman, maaaring ipagbawal ng ibang batas ang pagpapaalis sa pagkakataong ito o maaaring bigyan kayo ng mas mahabang panahon bago ang pagpapaalis. Minumungkahi kayong makipagbigay alam sa inyong abogado o lokal na katulong pang-legel o ahensiya ng payong pabahay upang pag-usapan ang alinmang karapatan na kayo ay mayroon.

**THÔNG BÁO BÁN**
**THEO ĐIỀU 2924.8 BỘ LUẬT DÂN SỰ**

Việc bắt đầu lịch thu tài sản này có thể ảnh hưởng đến quyền tiếp tục sinh sống của bạn tại đây. Bắt đầu từ hai mươi ngày trở đi sau thông báo, tài sản này có thể bị tịch thu để trả nợ. Nếu bạn đang mướn nhà tại đây, chủ tài sản mới sẽ gửi cho bạn cam kết mới về việc thuê hoặc mướn hoặc có thể sẽ gửi cho bạn thông báo rời khỏi nhà trong vòng 60 ngày. Tuy nhiên,một số luật khác có thể không cho phép việc yêu cầu rời lthồi nhà trong trường hợp này mà gửi cho bạn thông báo sớm hơn trước khi yêu cầu bạn rời đi. Bạn nên liên hệ với luật sư hoặc tổ chức giúp đỡ luật địa phương hoặc cơ sở tư vấn nhà để tham khảo những quyền bạn có.

# EXHIBIT E



This page is part of your document - DO NOT DISCARD

# 20090808608



Page
000

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**06/01/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 18, |
| TAXES: | 0. |
| OTHER: | 0. |
| PAID: | 18.0 |



LEADSHEET



200906010180008

00000617794

002130810

SEQ:
09

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

E4bdit

r18

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

Trustee Corps
30 Corporate Park, Suite 400
Irvine, CA 92606



06/01/2009

*20090808608*

[Space above this line for recorder's use only]

Trustee Sale No. CA0941█████  Loan No. 2707███  Title Order No. 550055███

## IMPORTANT NOTICE
# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is $16,211.14 as of 05/29/2009 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Trustee's Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

Trustee Sale No CA09414~~~~, Loan No 2707~~ Title Order No 5500~~~
ATO CONTROL NO, 94253BA4~~~~

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.**
c/o TRUSTEE CORPS
2112 BUSINESS CENTER DRIVE
2ND FLOOR
IRVINE, CA 92612
(949) 252-8300

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is conclud prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** MTC FINANCIAL INC, dba TRUSTEE CORPS is the original Trustee, du appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated 06/23/2008, execute by PHILIP E KOEBEL, AN UNMARRIED MAN, as Trustor, to secure obligations in favor of TAYLOR, BEAN & WHITAKE MORTGAGE CORP. the original Lender and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SEPARATE CORPORATION. ACTING SOLELY AS NOMINEE FOR LENDER AND LENDER'S SUCCESSOR AND ASSIGNS, the original Beneficiary Recorded on 06/30/2008 as Document No. 20081157813 of official records in th Office of the Recorder of Los Angeles County, California, as more fully described on said Deed of Trust Including a Note(s) f the sum of $360,000.00 that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently he by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that th payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 12/01/200 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLU FORECLOSURE COSTS AND LEGAL FEES.

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to TRUSTEE CORPS, sai Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and a documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereb immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligation secured thereby

DATED: 5/29/09

MTC FINANCIAL INC. DBA TRUSTEE CORPS, as Agent for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP.
BY: Security Union Title Insurance Company
      Authorized Signatory

SUSAN DANA

TRUSTEE CORPS IS A DEBT COLLECTOR.  ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE,

CA0941443-1
## EXHIBIT "A"
### Declaration Per CA Civil Code Section 2923.5

The undersigned officer or custodian of records for **TAYLOR BEAN AND WHITAKER MORTGAGE CORP.** ("Servicer" does hereby declare as follows:

That Servicer is the Beneficiary or acting as agent of the Beneficiary who is a party to a Deed of Trust securing certain real property commonly known as **255 ROBINSON ROAD, PASADENA, CA 91104** and located in Los Angeles; said Deed of Trust secures a loan in made to **PHILIP E KOEBEL, AN UNMARRIED MAN** ("Borrower") and is referenced by Loan Number: 2707█████.

A. ☒ Servicer does hereby state that Servicer has contacted the Borrower to (1) assess the borrower's financial situation; (2) explore options with the Borrower to avoid foreclosure such as repayment plans, forbearance agreements and/or loan modifications; (3) inform Borrower of Borrower's right to a subsequent meeting to be scheduled within 14 days of said contact; and (4) provide Borrower with a toll-free number to a HUD certified counseling agency.

B. ☐ Servicer does hereby state that Servicer was unable to make contact with the Borrower but that the following efforts were made, to contact Borrower:

☐ Sent a First-Class letter to Borrower's last known mailing address advising Borrower (a) that Borrower is in default under the Loan, (b) that Borrower should contact Servicer regarding alternative options to avoid foreclosure, (c) of Servicer's toll-free number with access to a live representative during Servicer's business hours, (d) of a toll-free number to a HUD certified counseling agency, and (e) that Borrower's failure to contact Servicer may result in commencement of a foreclosure action;

☐ Attempted to contact Borrower by telephone at least 3 times at 3 different hours on 3 different days at the primary telephone number on file;

☐ Two weeks after number 2 above was completed and no contact having been made, Servicer sent a letter via Certified Mail Return Receipt Requested to Borrower's last known mailing address advising Borrower (a) that Borrower is in default under the Loan, (b) that Borrower should contact Servicer regarding alternative options to avoid foreclosure, (c) of Servicer's toll-free number with access to a live representative during Servicer's business hours, (d) of a toll-free number to a HUD certified counseling agency, and (e) that Borrower's failure to contact Servicer within 30 days of receipt of this letter will result in commencement of a foreclosure action.

☐ Other: Please attached a detailed statement of attempts made to contact the Borrower(s).

C. ☐ Servicer does hereby state that:

☐ Servicer has determined that the Borrower's primary telephone number and secondary telephone number on file, if any, have been disconnected

☐ No efforts were made to contact Borrower in that on _____ Borrower surrendered the property as evidenced by a letter confirming the surrender or by delivering the keys to the property to the Servicer or Servicer's agent.

☐ No efforts were made to contact Borrower in that Servicer has evidence in its file and reasonably believes that the Borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to Servicer.

☐ No efforts were made to contact Borrower in that Servicer has verified information that on or before the date of this declaration, the Borrower field for bankruptcy and the proceedings have not been finalized.

This declaration is made for the purpose of inducing MTC Financial Inc. dba Trustee Corps. to proceed with the filing of a Notice of Default and/or a Notice of Sale under a Deed of Trust in which the undersigned has an interest knowing that the Trustee will rely upon the truth and accuracy of the statements contained herein in commencing and handling such foreclosure action up to and including filing the Notice of Sale on the foreclosure

I declare under penalty of perjury under the laws of the State of California that to the best of my knowledge the foregoing statements are true and correct. WITNESS my signature this _28th_ day of _May 2009_

**TAYLOR BEAN AND WHITAKER MORTGAGE CORP.**

By: _____

Its: _Loss Mit proclan_

_Ivy te_

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Arthur Nakazato.

The case number on all documents filed with the Court should read as follows:

## SACV11- 1978 AG (ANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of Califomia, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
  312 N. Spring St., Rm. G-8
  Los Angeles, CA 90012

[X] **Southern Division**
  411 West Fourth St., Rm. 1-053
  Santa Ana, CA 92701-4516

[ ] **Eastern Division**
  3470 Twelfth St., Rm. 134
  Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

ORIGINAL

Name & Address:
Lenore Albert, Esq.
Law Offices of Lenore Albert
7755 Center Avenue Suite #1100
Huntington Beach, CA 92647

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILIP KOEBEL, an individual,<br><br><br>PLAINTIFF(S)<br>v.<br>MTC FINANCIAL, INC., D/B/A TRUSTEE CORPS,<br>a business entity type unknown,<br>(See Attached)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**SACV11 - 1978 AG (ANx)**<br><br><br><br>**SUMMONS** |

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Lenore Albert, Esq._____, whose address is _7755 Center Ave. Suite #1100, Huntington Beach, CA 92647_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

DEC 2 2 2011

Dated: _____

Clerk, U.S. District Court,

By: _____

**DODJIE LAGMAN**

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11                                          SUMMONS

# ATTACHMENT

FEDERAL HOME LOAN MORTGAGE CORPORATION, a business entity type unknown, OCWEN LOAN SERVICING, LLC, a business entity type unknown, ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO and DOES 1 through 10, inclusive,

      Defendants.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) <br> PHILIP KOEBEL, an individual, | DEFENDANTS <br> MTC FINANCIAL, INC., D/B/A TRUSTEE CORPS, a business entity type unknown, <br><br> (See Attached) |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> Law Offices of Lenore Albert <br> 7755 Center Ave., #1100, Huntington Beach, CA 92647 <br> Ph: 714-372-2264 | Attorneys (If Known) <br><br> Unknown |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ 1,000,000.00

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
12 USC 2609 FDIC Consumer Protection Laws;  12 USC 1723a(a) Fannie Mae/Freddie Mac defendant

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | FEDERAL TAX SUITS |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability <br> ☒ 290 All Other Real Property | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) <br> ☐ 871 IRS-Third Party 26 USC 7609 |

## SACV11 - 1978 AG (ANx)

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                      ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                      ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                      ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
  ☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
  ☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | Florida<br>Virginia |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange, Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date December 21, 2011

  Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# ATTACHMENT

FEDERAL HOME LOAN MORTGAGE CORPORATION, a business entity type unknown, OCWEN LOAN SERVICING, LLC, a business entity type unknown, ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE, OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO and DOES 1 through 10, inclusive,

Defendants.